# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

BW ORCHARDS, LLC, C&D, FUEHRING
FARMS, INC., GOLDEN HART FRUIT
FARMS, LLC, GREEN VENTURES,
LLC, HERRYGERS FARMS, LLC,
JAMES JENSEN d/b/a JENSEN
FARMS, LAKESHORE FARMS, INC.,
LK VANSICKLE FARMS, LLC,
MALBURG ACRES, LLC, RANDY A.
FEDO d/b/a RAN-MARK CO., PAUL
OOMEN d/b/a PAUL OOMEN & SONS,
SLOCUM FARMS, LLC, VILLADSEN
TREE FARMS, INC., and PRODUCE
PAY, INC.,

     Plaintiffs,

     v.

                           No. 2:19-cv-00007

SPIECH FARMS GEORGIA, LLC, and
TIMOTHY M. SPIECH, BRADLEY A.
SPIECH, ROBIN L. SPIECH, STEVEN
M. SPIECH, and EVA M. STONE,
individually,

     Defendants.

## ORDER

Before the Court are Defendants Robin L. Spiech's and Steven
M. Spiech's Motion to Dismiss for Improper Venue, and, in the
Alternative, Motion to Transfer Venue, dkt. no. 25, and Defendants
Timothy M. Spiech's, Bradley A. Spiech's, and Eva M. Stone's Motion
to Dismiss for Improper Venue, and, in the Alternative, Motion to

Transfer Venue, dkt. no. 28. These motions have been fully briefed and are ripe for review. For the reasons stated below, Defendant's Motions to Dismiss are **DENIED** and Defendant's Motions to Transfer Venue are **GRANTED**.

## BACKGROUND

This case involves Plaintiffs' BW Orchards, LLC, Fuehring Farms, Inc., Golden Hart Fruit Farms, LLC, Green Ventures, LLC, Herrygers Farms, LLC, James Jensen d/b/a Jensen Farms, Lakeshore Farms, Inc., LK Vansickle Farms, LLC, Malburg Acres, LCC, Randy A. Fedo d/b/a Ran-Mark Co., Paul Oomen d/b/a Paul Oomen & Sons, Slocum Farms, LLC, Villadsen Tree Farms, Inc., (collectively "Growers") and Produce Pay, Inc. ("Produce Pay") (all together "Plaintiffs") claims against Defendants Spiech Farms Georgia, LLC ("Spiech Georgia"), Timothy M. Spiech, Bradley A. Spiech, Robin L. Spiech, Steven M. Spiech, and Eva M. Stone stemming from Defendants' alleged failure to pay under agreements to sell or buy produce. Specifically, Plaintiffs allege in their First Amended Complaint (hereinafter "the Complaint"), dkt. no. 11, that Growers had entered into various agreements with non-party Spiech Farms, LLC ("Spiech Michigan")—a Michigan Limited Liability Company with its principal place of business in Paw Paw, Michigan—under which Spiech Michigan would purchase produce, namely asparagus, from Growers. Dkt. No. 11 ¶¶ 21, 44-69. Additionally, Plaintiffs allege that Produce Pay entered into a "Distribution Agreement," under which

AO 72A
(Rev. 8/82)

Spiech Michigan agreed to sell and Produce Pay agreed to purchase certain produce, specifically grapes and blueberries, for the express purpose of Spiech Michigan selling such Produce to purchasers on commission on behalf of Produce Pay. Id. ¶¶ 106-122. At all relevant times, Spiech Michigan was the parent company of Spiech Georgia, and Timothy, Bradley, Robin, and Steven Spiech, as well as Eva Stone, were members of both Spiech Michigan and Spiech Georgia. Id. ¶¶ 21-22. Spiech Georgia is a Georgia limited liability company with its principal place of business in Baxley and Brunswick, Georgia, where it grew certain produce, specifically blueberries. Id. ¶ 21.

The gravamen of Plaintiffs' ninety-one-page Complaint is that Spiech Michigan failed to pay Growers under their respective agreements to sell produce and failed to pay Produce Pay for the produce sold to third-parties under the distribution agreement. Id. ¶¶ 32-43. The Complaint avers that Spiech Michigan, through the individual member Defendants, instead funneled money, including money earned from selling produce under the distribution agreement with Produce Pay, to Spiech Georgia to hide and shield that money from Plaintiffs and from Spiech Michigan's bankruptcy. Id. ¶¶ 40-43. The Complaint alleges that Defendants then used that money to fund blueberry farming operations in Georgia. Id. ¶ 41. Based on these facts Plaintiffs allege claims against Defendants for Failure to Pay Promptly (Count I), Making False or

AO 72A
(Rev. 8/82)

Misleading Statements (Count II), Unfair Trade Practice for Breach of Good Faith and Fair Dealing (Count III), and Unfair Trade Practice for Breach of Express or Implied Duties (Count IV) all under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §§ 499, and state law claims of Conspiracy to Defraud (Count V), Fraud (Count VI), Breach of Duty to Corporate Creditors (Count VII), Intentional Interference With a Contract (Count VIII), Conversion (Count IX), Unjust Enrichment (Count X), Negligence (Count XI), Common Enterprise Liability (Count XII), and Piercing the Corporate Veil: Alter-Ego Liability (Counts XIII-XVII). Id. ¶¶ 126-547.

Plaintiffs filed their initial Complaint on January 14, 2019, in the Southern District of Georgia. Dkt. No. 1. But, prior to that filing, on November 22, 2017, Spiech Michigan filed for bankruptcy in the Bankruptcy Court for the Western District of Michigan. See In re Spiech Farms, LLC, No. 17-05398 (Bankr. W.D. Mich. November 11, 2017), Dkt. No. 1. Those proceedings are still ongoing, and Plaintiffs are involved in that bankruptcy litigation. Id. After Plaintiffs filed their Complaint in this Court, Spiech Michigan filed a Motion for Contempt against Plaintiffs in the Bankruptcy Court for the Western District of Michigan on March 11, 2019, arguing that Plaintiffs' Complaint in this case violates the Bankruptcy Court's automatic stay under 11 U.S.C. § 362(a)(3) and that it seeks improper collateral review of

the orders of the Bankruptcy Court. <u>Id.</u> at Dkt. No. 611. That motion is still pending before the Bankruptcy Court. On that same day, March 11, 2019, Defendants filed their respective Motions to Dismiss for Improper Venue or in the Alternative, Motions to Transfer Venue, dkt. nos. 25, 28, presently before this Court.

## DISCUSSION

Defendants move this Court pursuant to Federal Rule of Civil Procedure 12(b)(3) for an order dismissing Plaintiffs' Amended Complaint for improper venue. Dkt. Nos. 25, 28. Alternatively, if the Court determines that venue in this District is proper, Defendants request that the Court nevertheless transfer this case to the United States District Court for the Western District of Michigan under 28 U.S.C. § 1404(a).

### I. Motion to Dismiss for Improper Venue

Under Rule 12(b)(3), a party may assert improper venue as a defense to a claim for relief. Fed. R. Civ. P. 12(b)(3). When a defendant objects to venue, "[t]he plaintiff has the burden of showing that venue in the forum is proper." <u>Pinson v. Rumsfeld</u>, 192 F. App'x 811, 817 (11th Cir. 2006). In considering a motion filed pursuant to Rule 12(b)(3), a court accepts the facts in the plaintiff's complaint as true. <u>Simbaqueba v. U.S. Dep't of Def.</u>, No. CV 309-066, 2010 WL 2990042, at *2 (S.D. Ga. May 28, 2010). "However, when a Rule 12(b)(3) motion is predicated upon key issues of fact, the court may consider matters outside the pleadings."

AO 72A
(Rev. 8/82)

Id. (citing <u>Curry v. Gonzales</u>, No. 105-2710, 2006 WL 3191178, at *2 (N.D. Ga. Oct. 31, 2006)). Where conflicts exist between the allegations in the complaint and the evidence outside of the pleadings, the court "must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." <u>Wai v. Rainbow Holdings</u>, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004); <u>see also</u> <u>Simbaqueba</u>, 2010 WL 2990042, at *2.

In diversity cases such as this one, venue is determined in accordance with the requirements of 28 U.S.C. § 1391(b), which provides that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or

> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

A court presiding over a case "laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

In this case, Plaintiffs have met their burden to show that venue is proper in the Southern District of Georgia under § 1391(b)(2). Looking to the sections of § 1391(b), subsection

6

(b)(1) is inapplicable because it is undisputed that not all of the Defendants are residents of Georgia in this case. Moreover, subsection (b)(3) is inapplicable because the Court finds that venue is also proper in the Western District of Michigan. Although Plaintiffs attempt to argue that the Western District of Michigan would not have jurisdiction over all of the parties or claims in this case, Plaintiffs fail to support that argument with any substantive reasons. Because the individual member Defendants conducted business as part of Spiech Michigan and Spiech Georgia in Michigan (let alone a few of them being residents of Michigan), the Court sees no reason why the Western District of Michigan would not have personal jurisdiction under a minimum contacts theory. The same is true for Spiech Georgia that, according to the facts alleged in the Complaint, did business in Michigan through working with, or as a part of, Spiech Michigan and sent produce to Michigan. As for subject matter jurisdiction, federal question jurisdiction exists for the PACA claims and supplemental jurisdiction covers the state law claims. Thus, the Court sees no basis for concluding that a federal court in the Western District of Michigan would not have jurisdiction over all of the parties or claims in Plaintiff's Complaint.

Therefore, Plaintiffs are left with relying on § 1391(b)(2), and they meet their burden under that section by showing that a substantial part of the events giving rise to the claims in their

AO 72A
(Rev. 8/82)

Complaint occurred in the Southern District of Georgia. It is important to note that Plaintiffs are not required to show that a majority of the events occurred in the Southern District of Georgia; rather, they only need to show that a substantial part of the events occurred here. Morgan v. N. MS Med. Ctr., Inc., 403 F. Supp. 2d 1115, 1123 (S.D. Ala. 2005), aff'd sub nom. Morgan v. N. Mississippi Med. Ctr., Inc., 225 F. App'x 828 (11th Cir. 2007). ("[T]he question confronting the undersigned is not whether the lion's share of the events at issue occurred in the Southern District of Alabama, nor is it the relative magnitude and significance of the events occurring in this judicial district as compared to those in the Northern District of Mississippi. Instead, the question is simply whether 'a substantial part' of the events transpired here."). Here, Plaintiffs' Complaint alleges that Defendants, instead of paying Plaintiffs money owed to them under the various agreements that the parties had, funneled money to Spiech Georgia—which is located in the Southern District of Georgia—to hide that money from Plaintiffs. See Dkt. No. 11 ¶¶ 41-43. Plaintiffs further allege that Defendants did this while fraudulently misleading the Plaintiffs and reassuring them that Defendants would pay, when really Defendants were just trying to buy time before filing bankruptcy and hiding the money from that bankruptcy by funneling it to Spiech Georgia. See id. ¶¶ 41-43, 312-313. Plaintiffs allege that instead of paying them, Defendants

AO 72A
(Rev. 8/82)

used the money sent to Spiech Georgia to fund Spiech Georgia's operations, including purchasing equipment, funding labor operations, and conducting other activities. See id. ¶¶ 41-43, 319-320.

At a minimum, these facts form a substantial part of the events that are the basis for certain counts in the Complaint, such as Count IX for conversion and Count X for unjust enrichment, in that by Defendants funneling money to Spiech Georgia, Spiech Georgia unlawfully converted funds that were owed to Plaintiffs and were unjustly enriched by receiving those funds. Moreover, the basis for many of Plaintiffs' other claims is that instead of paying Plaintiffs for the money that they were owed, Defendants sent that money to Spiech Georgia to hide it, and Spiech Georgia used that money to fund its operations. Thus, at least for some counts in the Complaint, a "substantial part of the events . . . giving rise" to those counts occurred in the Southern District of Georgia. Although a majority of the facts that make up this case may not have occurred here, for the purposes of Defendant's Motion to Dismiss for Improper Venue, Plaintiffs have met their burden to show that at least a substantial part of those facts occurred in this District. As such, Defendant's Motion to Dismiss is **DENIED**.

## II. Motion to Transfer Venue

Turning to the second issue of transferring venue, 28 U.S.C. § 1404(a) provides that a district court may transfer a civil action "to any other district or division where it might have been brought," when it is "for the convenience of parties and witnesses" and "in the interest of justice." District courts are vested with broad discretion in weighing conflicting arguments regarding a venue transfer. See England v. ITT Thompson Indus. Inc., 856 F.2d 1518, 1520 (11th Cir. 1988). Courts traditionally afford considerable deference to a plaintiff's choice of forum, disturbing it only where it is "clearly outweighed by other considerations." Robinson v. Giamarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996) (quoting Howell v. Tanner, 650 F.2d 610, 616 (5th Cir. 1981)). Thus, a party who moves to transfer venue pursuant to Section 1404(a) bears the burden of establishing "that the balance of convenience and justice 'weighs heavily in favor of the transfer.'" Duckworth v. Med. Electro-Therapeutics, Inc., 768 F. Supp. 822, 831 (S.D. Ga. 1991) (quoting Elec. Transaction Network v. Katz, 734 F. Supp. 492, 501 (N.D. Ga. 1989)).

"The question of whether a transfer is appropriate depends upon two inquires: (1) whether the action might have been brought in the proposed transferee court, and (2) whether [certain] convenience factors are present to justify the transfer." Greely v. Lazer Spot, Inc., No. CV 411-096, 2012 WL 170154, at *2 (S.D.

AO 72A
(Rev. 8/82)

Ga. Jan. 19, 2012) (citing <u>Mason V. Smithkline Beecham Clinical Labs.</u>, 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001)). The convenience factors include the following:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

<u>Manuel v. Convergys Corp.</u>, 430 F. 3d 1132, 1135 n.1 (11th Cir. 2005).

**A. Case Could Have Been Brought in the United States District Court for the Western District of Michigan.**

Looking to the first question, as noted in the previous section, this case could have been brought in the Western District of Michigan. As with the Southern District of Georgia, venue would have been proper in the Western District of Michigan pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims took place in Michigan. These events include all of the underlying agreements between Spiech Michigan and Plaintiffs, Spiech Michigan's attempts to assure Plaintiffs that it would pay what money it owed, and Spiech Michigan's transferring or funneling of funds to Spiech Georgia. The Complaint states that at all times the individual Defendants

controlled and managed Spiech Michigan and Spiech Georgia's operations and financial dealings. See, e.g., Dkt. No. 11 ¶ 252. It is plain from the facts alleged in the Complaint that a substantial part—indeed a majority as explained below—of the events underlying Plaintiffs' claims took place in Michigan.

As mentioned in the previous section, Plaintiffs argue—without providing any support—that the Western District of Michigan would not have jurisdiction over all parties in this case or all claims. Again, the Court finds no basis to support this contention. The Western District of Michigan would have federal question jurisdiction and supplemental jurisdiction over the claims in this case, and it would have personal jurisdiction, courtesy of the Defendants business contacts via Spiech Michigan in the forum state—Michigan. Therefore, the Court concludes that this action could have been brought in the Western District of Michigan.

## A. Transfer of Venue Convenience Factors

### 1. Trial Efficiency and the Interests of Justice, Based on the Totality of the Circumstances

Turning to the second question—the factors for transfer of venue—here, the strongest factor in favor of transfer of venue is the ninth factor of trial efficiency and the interests of justice—specifically because of the related bankruptcy proceedings pending in the Western District of Michigan. 28 U.S.C. § 1404(a) "permits

AO 72A
(Rev. 8/82)

a district court to transfer a case to another district court where a related bankruptcy proceeding is pending." <u>Crimson Yachts v. M/Y BETTY LYN II</u>, No. CIV.A. 08-0334-WS-C, 2011 WL 176052, at *1 (S.D. Ala. Jan. 19, 2011) (citing <u>Integrated Health Servs. of Cliff Manor, Inc. v. THCI Co., LLC</u>, 417 F.3d 953, 957-58 (8th Cir. 2005)). This is permissible because "[d]istrict courts have 'jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." <u>Integrated Health Servs.</u>, 417 F.3d at 958. "A claim is 'related to' a bankruptcy case within the meaning of § 1334(b) if it 'could conceivably have any effect' on the bankruptcy estate," and such effects "include any matter that could 'alter the debtor's rights, liabilities, options, or freedom of action . . . and which in any way impacts upon the handling and administration of the bankrupt estate.'" <u>Id.</u> (citations omitted).

In this case, the civil claims in Plaintiffs' Complaint are related to the pending bankruptcy case of Spiech Michigan pending before the Western District of Michigan, and transferring this action to the Western District of Michigan serves the interests of justice and "judicial economy by putting the related matter before the same court handling the bankruptcy." <u>Id.</u> As an initial matter, while it is true that Spiech Michigan is not a party to this case, based on the facts alleged in the Complaint, that fact does not mean that Plaintiffs' claims are not related to the

AO 72A
(Rev. 8/82)

bankruptcy proceeding in the Western District of Michigan. Plaintiffs' involvement in that bankruptcy proceeding and Plaintiffs' goal, at least in part, in this case are the same—namely to get paid the money allegedly owed by Defendants. Moreover, Plaintiffs' Complaint avers that Spiech Michigan and Spiech Georgia were essentially the same entity such that Spiech Georgia is liable for Spiech Michigan's debts and that the individual Defendants who were members of both companies should be personally liable—under a veil-piercing theory—for the debts of the companies because of how they conducted their business with those corporate entities. In other words, Plaintiffs' claims in this case could conceivably have an effect on the bankruptcy estate by attempting to recover damages for funds owed to Plaintiffs by Spiech Michigan through Spiech Georgia or the individual Defendants such that this action would likely impact the handling and administration of the bankruptcy estate in the Western District of Michigan case. In essence, the money that Plaintiffs are pursing in this case could very well be part of the bankruptcy estate at issue in the bankruptcy action.

For these same reasons, Spiech Michigan has filed a Motion for Contempt in the Bankruptcy Court for the Western District of Michigan against the Plaintiffs in this case arguing that the Plaintiffs have violated the automatic stay under 11 U.S.C. § 362(a)(3). That provision provides that a bankruptcy petition

AO 72A
(Rev. 8/82)

"operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or from property of the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Property of the estate includes "all legal or equitable interests of the debtor in the property as of the commencement of the case," including claims. 11 U.S.C. § 541(a)(1). Thus, 11 U.S.C. § 362(a)(6) prohibits "any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case." Now, this Court is not tasked with deciding whether these provisions have been violated, but as to the issue of transferring venue at issue in this Order, it is an important factor in the totality of the circumstances that the Western District of Michigan is currently considering a motion to hold the Plaintiffs in this case in contempt for filing the Complaint in this case. If the Bankruptcy Court grants that motion, it would directly impact this case.

However, even if the Bankruptcy Court denies the motion, that motion is still a prime example of how allowing this case to proceed here while a related bankruptcy action proceeds in Michigan could result in inconsistent judgments or, at the very least, confusing or inefficient resolution of issues involving the parties in this case and the bankruptcy action. Thus, the factors of the interests of justice and judicial efficiency counsel strongly in favor of transfer in this case.

15

## 2. Convenience of the Witnesses

Looking to the other factors, the first factor of the convenience of the witnesses is neutral. Convenience of the witnesses is the most important factor to consider under Section 1404(a). Duckworth, 768 F. Supp. at 831 (citing Elec. Transaction Network, 734 F. Supp. at 501); see also Ramsey v. Fox News Network, LLC, 323 F. Supp. 2d 1352, 1356 (N.D. Ga. 2004) (citing McNair v. Monsanto Co., 279 F. Supp. 2d 1290, 1311 (M.D. Ga. 2003), and State Street Capital Corp. v. Dente, 855 F. Supp. 192, 197 (S.D. Tex. 1994)). Nevertheless, courts afford less weight to witnesses who closely align with either party, as it is presumed that these witnesses are more willing to testify in a different forum. See Ramsey, 323 F. Supp. 2d at 1356 (citing Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co., 844 F. Supp. 1163, 1166 (S.D. Tex. 1994)). Instead, "the focus of the Court should be on the convenience of 'key witnesses'"—witnesses "which have information regarding the liability of Defendant[s]." Id. at 1356-57 (citing McNair, 279 F. Supp. 2d at 1311, and Matt v. Baxter Healthcare Corp., 74 F. Supp. 2d 467, 470 (S.D. Pa. 1999)).

In this case, Defendants argue that Michigan is the more convenient forum for witnesses because of the nineteen litigants in this case, "sixteen of them are residents in the Western District of Michigan, two are Florida residents and one is a

AO 72A
(Rev. 8/82)

California resident." Dkt. No. 35 at 8.[1]  Dkt. No. 11 ¶ 21.

Defendants also argue that no material non-party witnesses reside in the Southern District of Georgia, but rather, all key non-party witnesses, which include former employees with material information, lenders, and other parties with knowledge of Defendants' and Plaintiffs' business dealings are located in Michigan.    Finally, the individual Defendants swore in their affidavits that to their knowledge, all witnesses—with the exception of Robin and Steven Spiech—reside in Michigan.  See Dkt. Nos. 28-3, 28-4, 28-5, 28-6, 28-7.

Plaintiffs argue that they are more than willing as party witnesses to travel to the Southern District of Georgia, see dkt. no. 30 at 9, and they point to non-party witnesses located in Georgia including equipment operators who will testify to the purchase and use of tractor harvesters and other blueberry harvesting equipment, laborers hired by Spiech Georgia who will testify to the blueberry farming of Spiech Georgia, the landlord who may testify to improvements in the land that Spiech Georgia utilized, and witnesses from Pineland Bank that handled the land contracts and liens on Spiech Georgia's land and the funds and

---

[1] The Court notes that Spiech Georgia is a Georgia entity that is incorporated in Georgia and has its principal place of business in Georgia.  Dkt. No. 11 ¶ 21.  However, for the purposes of this factor, corporate entities like Spiech Georgia and the Plaintiff corporations cannot be witnesses in the case as they are merely corporate entities.  Instead, when the Court refers to witnesses, such as those on behalf of the corporate entity Plaintiffs, it is referring to officers of those entities.

AO 72A
(Rev. 8/82)

traceability of payments it received toward those contracts. Plaintiffs also point out that two of the Defendants, Steven and Robin Spiech, live in Florida, which is much closer to the Southern District of Georgia than the Western District of Michigan. See id. at 10-11.

Analyzing this factor, it is clear that either forum would be more convenient for some witnesses and less convenient for others. As for the parties themselves, the Court affords less weight to them because they are presumed to be more willing to testify in either forum; but, it is worth noting that the vast majority of the party witnesses are located in the Western District of Michigan or travel there for business. See Dkt. Nos. 28-3, 28-4, 28-5, 28-6, 28-7. Next, as for key non-party witnesses, former employees and lenders located in Michigan will be important to this case—which centers around alleged money owed by Defendants under agreements with Plaintiffs—because they will testify to the contracts and business dealings between these parties. It is unclear how important testimonies from laborers on Spiech Georgia's farm or the landlord will be to the issue of whether Defendants avoided paying Plaintiffs and instead funneled money to Spiech Georgia to hide it from Plaintiffs and the bankruptcy proceedings, but testimony from the bank in Georgia and the equipment operators may be able to show evidence of money being transferred and utilized that was supposed to be paid to

Plaintiffs. Finally, while it is true that geographically Steven and Robin Spiech are closer to the Southern District of Georgia, they swore that the Western District of Michigan was more convenient as they already travel there for business. See Dkt. Nos. 28-3, 28-4.

Because both sides will have witnesses that are inconvenienced by the selection of either forum, this factor is neutral. If the case is heard in the Western District of Michigan, it will be close to most of the party witnesses and witnesses with knowledge of Defendants' business, like former employees and lenders, while those witnesses with the direct knowledge of events that occurred at Spiech Georgia, like the bank and equipment operators, would be inconvenienced. The opposite is true if the case is heard in the Southern District of Georgia. Thus, despite being the most important factor, this factor favors neither party.

### 3. Location of Documents and Other Evidence

Next, the location of documents and ease of access to other proof factor is also neutral. While it is true that underlying agreements and other business transactions took place in Michigan and Defendants argue that all documents and records relevant to this case are located in Michigan, neither party has shown why any documents or other evidence of such business dealings could not be easily transferred to the Southern District of Georgia. In today's world, any typical business documents can easily be scanned and

19

sent electronically to almost anywhere. For this reason, in cases like this, the "location of documents is not a significant factor in the transfer analysis given the widespread use of electronic document production." Internap Corp. v. Noction Inc., 114 F. Supp. 3d 1336, 1341 (N.D. Ga. 2015) (citation omitted). Thus, this factor favors neither party, and is thus, neutral.

### 4. Convenience of the Parties

Turning to the convenience of the parties factor, this factor weighs in favor of transfer. Under this factor, "to justify transfer, the inconvenience of the present forum to the moving party [must] substantially outweigh[ ] the inconvenience of the proposed alternative forum to the non-moving party." Spanx, Inc. v. Times Three Clothier, LLC, No. 1:13-CV-710-WSD 2013 WL 5636684, at *2 (N.D. Ga. Oct. 15, 2013). As for Plaintiffs, they are all entities located in the Western District of Michigan, with the exception of Produce Pay which has its principal place of business in California and is incorporated in Delaware, see dkt. no. 11 ¶ 16, and they have stated that they have no problem traveling to the Southern District of Georgia to pursue this case, see dkt. no. 30 at 10. As such, either venue would be convenient for Plaintiffs. However, the Western District of Michigan would be much more convenient for Defendants, overall. Spiech Michigan, although not a party to this suit, is located in the Western District of Michigan. Dkt. No. 11 ¶ 21. Tim and Bradley Spiech

AO 72A
(Rev. 8/82)

along with Eva Stone are all Michigan residents. <u>Id.</u> Tim and Bradley Spiech swore that it would be more convenient for this case to proceed in Michigan as they are both Michigan residents, have recently started new jobs, and have limited funds to apply toward the litigation. Dkt. No. 25-5 ¶¶16-17; Dkt. No 25-6 ¶¶ 15-16. Eva Stone also swore that Michigan would be a more convenient forum as she is looking for a new job and has very limited funds to apply to the litigation. Dkt. No. 28-7 ¶¶ 14-15. Although Steven and Robin Spiech reside in Florida, both swore that it would be more convenient for them for the case to proceed in Michigan as they frequently travel to Michigan already to conduct business. Dkt. No. 25-3 ¶ 13; Dkt. No. 25-4 ¶ 8. Furthermore, both Steven and Robin are unemployed and Steven is looking for work in both Michigan and Florida. Dkt. No. 25-3 ¶ 14; Dkt. No. 25-4 ¶ 9. In addition to these facts, Defendants argue that both Spiech Michigan and Spiech Georgia are insolvent and because of the bankruptcy proceedings in the Western District of Michigan, any administrative or winding-up functions of those entities will occur in Michigan.

Based on these facts, it is clear that allowing the case to proceed in the Western District of Michigan will impose little, if any, inconvenience to the Plaintiffs, and that inconvenience is substantially outweighed by the inconvenience of the case proceeding in the Southern District of Georgia to the Defendants.

AO 72A
(Rev. 8/82)

The Defendants that reside in Michigan will have to travel down to Georgia for this case, and the Defendants that live in Florida will have to travel both up to Georgia for this case while also traveling to Michigan for the related bankruptcy proceedings. Meanwhile, the vast majority of Plaintiffs are located in Michigan and have no problem traveling down to Georgia for this case. Thus, this factor weighs in favor of transferring venue.

**5. Locus of Operative Facts.**

Next, the locus of operative facts weighs in favor of transfer as the majority of the underlying facts of this case occurred in Michigan. "'The locus of operative facts' has been interpreted as the place where events and actors material to proving liability are located." See Seltzer v. Omni Hotels, No. 09 Civ. 9115(BSJ) (JCF), 2010 WL 3910597, at *4 (S.D.N.Y. Sept. 30, 2010). "[C]ourts routinely transfer cases when the principal events occurred and the principal witnesses are located in another district." Id. (quoting In re Nematron Corp. Sec. Litig., 30 F. Supp. 2d 397, 404 (S.D.N.Y. 1998)). However, where there is no single locus of the operative facts, this factor is neutral and does not support a transfer. See Smith v. Dollar Tree Stores, Inc., No. 1:11-CV-02299-SCJ, 2012 U.S. Dist. LEXIS 76944, at *10 (N.D. Ga. May 10, 2012).

In this case, the principle events and witnesses underlying Plaintiffs' claims are located in the Western District of Michigan.

AO 72A
(Rev. 8/82)

While a substantial part of the events underlying Plaintiffs' claims occurred in this District, as explained in the first section above, a majority of the underlying facts of this case occurred in Michigan. Based on Plaintiffs' Complaint, the only events that occurred in Georgia were part of the transfer of funds sent from Spiech Michigan to Spiech Georgia to hide money allegedly owed to Plaintiffs and the use of that money to fund Spiech Georgia's blueberry operations in Georgia. All of the other facts leading up to that funneling of money occurred in Michigan. These facts include all the various produce contracts that Plaintiffs entered into with Spiech Michigan, the distribution agreement between Spiech Michigan and Produce Pay, Spiech Michigan's letters and promissory notes assuring Plaintiffs that it would pay them the money owed to them, Spiech Michigan's transferring of the money (presumably from Michigan) to Spiech Georgia, and Spiech Michigan's filing for bankruptcy. See generally Dkt. No. 11 ¶¶ 32-125. Moreover, the majority of the parties themselves and business employee witnesses are located in Michigan where these events took place. See id. ¶ 21; Dkt. No. 36 at 7.

While some of Plaintiffs' claims revolve around actions taken by Defendants in Georgia, such as using the funds allegedly owed to Plaintiffs to fund Spiech Georgia's operations and the conversion claim (Count IX) and the unjust enrichment claim (Count X), the bulk of the claims in the Complaint involve Defendants'

alleged failure to pay Plaintiffs money that Plaintiffs were owed under the agreements entered into between the parties. Plaintiffs argue that these claims have nothing to do with the contracts entered into with Defendants because they do not allege a breach of contract claim, but looking to the facts of this case, the lion's share of Plaintiffs' Complaint is premised on the allegations that they entered into agreements with Defendants, Defendants failed to pay, and instead of paying, Defendants lied and defrauded Plaintiffs and hid the money owed to Plaintiffs by sending it to Spiech Georgia. In other words, the underlying agreements and the Defendants other actions in Michigan are central to Plaintiffs' claims.

For these reasons, the Court finds that the lotus of operative facts occurred in Michigan. Therefore, this factor weighs in favor of transfer.

### 6. The Availability of Process to Compel the Attendance of Unwilling Witnesses

The availability of process to compel the attendance of unwilling witnesses, for the same reasons as discussed for the convenience of the witnesses factor, is neutral. Pursuant to Federal Rule of Civil Procedure 45(c)(1), "[a] subpoena may command a person to attend a trial" only if the trial is either "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or "within the state where the

AO 72A
(Rev. 8/82)

person resides, is employed, or regularly transacts business in person," only if such person "is a party or a party's officer" or "would not incur substantial expense."

As explained above, Plaintiffs assert that various non-party witnesses reside in Georgia while Defendants assert that other non-party witnesses reside in Michigan. As such, whether this case proceeds in the Southern District of Georgia or the Western District of Michigan, some witnesses will be beyond the court's subpoena power. Based on the evidence before this Court, the Court cannot say whether Plaintiffs' or Defendants' will be more essential for this case, and therefore, because either location will allow some witnesses to be subpoenaed but not others, this factor does not favor either party.[2]

---

[2] Plaintiffs point out that Steven and Robin Spiech reside in Florida, which would be more than 100 miles from the Western District of Michigan. As an initial matter, it is not entirely clear that Steven and Robin Spiech, who allegedly reside in Hudson Florida, dkt. no. 30 at 2, are within 100 miles of the Southern District of Georgia either (based on the Court's estimate, Hudson is approximately 130 to 140 miles from the border of the Southern District of Georgia). Moreover, because both Steven and Robin Spiech have sworn that they periodically travel to Michigan for business (Robin swore that she travels with her husband when he travels to Michigan for business), the Court finds that they would fall under the subpoena rule for parties. Dkt. Nos. 28-3, 28-4. Even if their travel did not amount to "frequent" travel, because they swear that they travel to Michigan periodically for business, the Court finds that they could likely be subpoenaed for a hearing, deposition, or trial without incurring substantial expense, despite their limited funds to put toward this litigation. Dkt. Nos. 28-3, 28-4. However, Steven and Robin swear that they have no plans to travel to Georgia. Dkt. Nos. 28-3, 28-4.

AO 72A
(Rev. 8/82)

### 7. Relative Means of the Parties

As for the relative means of the parties factor, this factor weighs in favor of transferring venue because of the Defendants' financial situations. This factor calls for a distinct inquiry into the parties' financial means. Bell v. Rosen, No. CV214-127, 2015 WL 5595806, at *12 (S.D. Ga. Sept. 22, 2015). Here, as discussed above, some of the individual Defendants are unemployed while others have started new jobs, and they have all sworn that they do not have many funds available to use toward this litigation. Dkt. No. 25-3 ¶ 14; Dkt. No. 25-4 ¶ 9; Dkt. No. 25-5 ¶¶16-17; Dkt. No 25-6 ¶¶ 15-16; Dkt. No. 28-7 ¶¶ 14-15.

Moreover, Spiech Michigan and Spiech Georgia are insolvent, and Spiech Michigan is currently in bankruptcy proceedings in the Western District of Michigan. Meanwhile, Plaintiffs have not shown any issue concerning their financial means, and instead, have said that they are more than willing to travel to the Southern District of Georgia for this case. In addition to these facts, if this case remains in the Southern District of Georgia, at least some of the individual Defendants will likely have to spend time and money to travel to this district for this case while also spending time and money to travel to Michigan to handle the related bankruptcy proceedings. Thus, weighing the relative means of the parties, the Court finds that this factor weighs in favor of transfer.

AO 72A
(Rev. 8/82)

## 8. Forum's Familiarity with Governing Law

Turning to the next factor of the forum's familiarity with governing law, this factor is also neutral because based on the facts alleged in the Complaint, it appears that some claims will be governed by federal law, some by Georgia law, and others by Michigan law. In this case, this court has federal question jurisdiction over Plaintiffs' PACA claims and supplemental jurisdiction over Plaintiffs' state law claims. In such a case—where the court has federal question jurisdiction and supplemental jurisdiction over state law claims—the federal court applies the choice of law rules of the state in which it sits for the state law claims. See In re Enron Corp. Sec., Derivative & "ERISA" Litig., 511 F. Supp. 2d 742, 790-91 (S.D. Tex. 2005) ("In federal question jurisdiction cases, where a court is exercising supplemental jurisdiction over state-law claims, a federal court also applies the choice of law rules of the forum state to the state law claims."); Best Canvas Prod. & Supplies, Inc. v. Ploof Truck Lines, Inc., 713 F.2d 618, 621 (11th Cir. 1983) (explaining that under Klaxon Co. v. Stentor Electrical Manufacturing Co., 313 U.S. 487 (1941), "[a] federal court is obliged to apply the choice of law rule of the state in which it sits."); CPI Plastics, Inc. v. USX Corp., No. CIV.A. 3:95-CV-124-J, 1999 WL 33633079, at *6 (N.D. Ga. Jan. 20, 1999), aff'd sub nom. CPI Plastics v. USX Corp., 212 F.3d 599 (11th Cir. 2000) (federal courts should address

pendent state law issues in federal question cases according to the principles set forth in Klaxon).

Under this standard, this Court would apply the choice of law rules of Georgia. Moreover, "[w]here a case is transferred to a more convenient forum based on 28 U.S.C. § 1404(a) . . . the court is obligated to apply the state law that would have applied absent the change in venue." MC Asset Recovery, LLC v. S. Co., No. 1:06-CV-417-BBM, 2009 WL 10666059, at *23 (N.D. Ga. Feb. 5, 2009). Thus, if this case were transferred to the Western District of Michigan, Georgia's choice of law rules still apply. For tort actions, "Georgia applies the choice-of-law principle *lex loci delicti*, which means apply the law of the place where the tort was committed." Hughes v. Kia Motors Corp., 766 F.3d 1317, 1327 (11th Cir. 2014) (citing Dowis v. Mud Slingers, Inc., 621 S.E.2d 413, 419 (Ga. Ct. App. 2005)). So, for the purposes of this factor, the governing law that would apply to Plaintiffs' state law tort claims depends on where the tort was committed. Finally, for contract actions, Georgia applies the rule of "*lex loci contractus*," which means that "the validity, nature, construction, and interpretation of a contract are governed by the substantive law of the state where the contract was made, except that where the contract is made in one state and is to be performed in another state, the substantive law of the state where the contract is performed will apply." Federated Rural Elec. Ins. Exch. v. R.D.

28

Moody & Assocs., Inc., 468 F.3d 1322, 1325 (11th Cir. 2006) (citing

Fed. Ins. Co. v. Nat'l Distrib. Co., Inc., 417 S.E.2d 671, 673

(Ga. Ct. App. 1992)). Defendants argue that because the agreements

entered into between Defendants and Plaintiffs were entered into

in Michigan, those agreements will be interpreted according to

Michigan law. Plaintiffs respond that their claims do not sound

in contract, but rather in tort, and therefore, Georgia law will

apply to their state law claims. Neither party disputes the fact

that federal law will obviously apply to Plaintiffs' PACA claims.

Looking to the facts alleged in the Complaint, the Court finds

that while some of Plaintiffs' claims will be governed by Georgia

law, others will be governed by Michigan law. As an initial

matter, although Plaintiffs' claims stem from the agreements made

with Defendants, they are not contract claims, but rather tort

claims involving those agreements. However, to the extent this

case requires a court to interpret the underlying agreements—which

is possible based on the facts alleged in the Complaint—Michigan

law would apply because the facts alleged in the Complaint and

other evidence presented concerning the issue of venue show that

the agreements were entered into in Michigan, not Georgia.

As for the tort claims, Georgia law would govern certain tort

claims such as conversion (Count IX), where Plaintiffs allege that

Defendants took money owed to Plaintiffs and converted it to their

own use to purchase new harvesters, pay labor costs, as well as

other costs of fuel, food, supplies, equipment, housing, and technology upgrades all for the operations of Spiech Georgia, and unjust enrichment (Count X), where Plaintiffs allege that buy using funds owned to Plaintiffs to fund Spiech Georgia's operations in those ways, Defendants were unjustly enriched. Dkt. No. 11 ¶¶ 377-418. These torts were committed in Georgia.

However, other torts alleged by Defendants, such as fraud (Count VI), were committed in Michigan. The fraud claim centers around the allegations that Defendants intentionally misled the Growers by sending them the letter and promissory note promising to pay the debts owed under the agreements with the growers in an effort to induce the Growers to hold off on collecting the money until Defendants could file for bankruptcy and that Defendants fraudulently assured Produce Pay in the distribution agreement that they had clean title to the produce when in fact they did not and that they entered the distribution agreement never intending to honor it since Defendants filed for bankruptcy less than three months later. Dkt. No. 11 ¶¶ 299-336. These alleged torts did not occur when Defendants siphoned money to Georgia, but instead, occurred at the time that the individual Defendants allegedly made these statements, assurances, or promises, which based on the facts of the Complaint appear to have occurred in Michigan through Spiech Michigan. For example, as to the allegedly fraudulent letters and promissory notes—which are attached to the Amended Complaint—those

AO 72A
(Rev. 8/82)

documents are from Spiech Michigan and list a Michigan address on the letters. See Dkt. No. 11-1. Thus, for the purposes of the governing law factor, at least to some extent, in either proposed venue, the governing law of another state besides the forum state will be involved. As such, this factor is neutral.

### 9. Plaintiff's Choice of Forum

The last factor to discuss is the Plaintiffs' choice of forum. The general rule is that a plaintiff has the right to choose the forum in which to pursue a case. See Bell, 2015 WL 5595806, at *13 ("A court 'must not disturb the plaintiff's choice of forum unless that choice is clearly outweighed by other considerations.'" (citations omitted)). However, a plaintiff's choice of forum is "accorded little weight" where the plaintiff resides outside of the forum. See Larison v. Atl. Coast Bank, No. CV415-184, 2016 WL 1572965, at *3 (S.D. Ga. Apr. 15, 2016) (citation omitted); Rigby v. Flue-Cured Tobacco Co-op. Stabilization Corp., 2006 WL 1312412, at *5 (M.D. Ga. May 11, 2006) (stating that "plaintiff's choice of forum is afforded less weight if the plaintiff resides outside the forum due to the difficulty plaintiff will have in showing why the original forum is more convenient"). Moreover, "the choice of forum is afforded little weight if the majority of the operative events occurred elsewhere." Bell, 2015 WL 5595806, at *13 (citation omitted); Rigby, 2006 WL

AO 72A
(Rev. 8/82)

1312412, at *5. In these instances, "no party is particularly inconvenienced by a transfer." <u>Bell</u>, 2015 WL 5595806, at *13.

In this case, Plaintiffs' choice of forum is afforded little weight due to the fact that none of the Plaintiffs reside in Georgia and the fact that the majority of the operative events in this case occurred in Michigan, as explained above. Thus, while this factor always leans in favor of Plaintiffs, here, it does not weigh heavily in favor of denying Defendants' Motion to Transfer Venue.

After weighing the nine factors discussed above and finding that four factors were neutral, that four factors weighed in favor of transfer, that no factors weighed in favor of transfer, and that the plaintiff's choice in the forum should be given little weight under these circumstances, the Court concludes that this case should be transferred to the Western District of Michigan pursuant to 28 U.S.C. § 1404(a). The strongest factor weighing in favor of transfer is the interests of justice and trial efficiency based on the related bankruptcy proceedings pending in the Western District of Michigan. Because the underlying issue in Plaintiffs' Complaint is Defendants' alleged failure to pay under the agreements between Plaintiffs and Defendants and because Spiech Michigan—the entity that entered those agreements—is currently participating in bankruptcy proceedings that Plaintiffs are also involved in, allowing this case to proceed here would lead to

32

inefficient resolution of the issues at best and inconsistent or conflicting legal judgments at worst. This factor combined with the other factors weighing in favor of transfer lead this Court to conclude that for the convenience of the parties and in the interests of justice, this case should be transferred. Thus, Defendants' Motions in the Alternative to Transfer Venue is **GRANTED**.

### CONCLUSION

For these reasons, Defendants' Motions to Dismiss for Improper Venue, dkt. nos. 25, 28, are **DENIED** and Defendants' Motions in the Alternative to Transfer Venue, dkt. nos. 25, 28, are **GRANTED**. This matter is hereby **TRANSFERED** to the United States District Court for the Western District of Michigan.

**SO ORDERED**, this 26th day of June, 2019.

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)